UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
Case No.: 07-CIV-60366  COOKE/BANDSTRA

KAREN WALLER
f/k/a KAREN RAMATI,

    *Plaintiff*,

v.

MEDICS AMBULANCE SERVICES,
INC.,

    *Defendant.*

                                   /

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**THIS MATTER** is before the Court upon Defendant's Motion for Summary Judgment, filed February 28, 2008 [DE 31]. This Motion has now been fully briefed. For the reasons below, Defendant's Motion is granted.

**I.     STANDARD OF REVIEW**

Summary judgment is proper when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue as to any material fact and compels judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Only the existence of a genuine issue of material fact, as opposed to a simple factual dispute, will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). No genuine issue of material fact exists when the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

That this is an employment discrimination case involving questions of motive and intent,

does not change the standard.  As stated by the Supreme Court and reflected by the Eleventh Circuit:

> While acknowledging that questions of fact in job discrimination cases are "both sensitive and difficult" and "[t]here will seldom be 'eyewitness' testimony as to the employer's mental processes," the Supreme Court has told us that "none of this means that trial courts or reviewing courts should treat discrimination differently from other ultimate questions of fact." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 524, 113 S.Ct. 2742, 2756, 125 L.Ed.2d 407 (1993) (quoting *Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 716, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983)). And quite recently, the Court rejected a rule which would have made it easier for job discrimination plaintiffs to get their case to a jury, explaining that "[t]o hold otherwise would be effectively to insulate an entire category of employment discrimination cases from review under Rule 50, and we have reiterated that trial courts should not treat discrimination differently from other ultimate questions of fact." *Reeves*, 120 S.Ct. at 2109 (internal quotation and citation omitted). The long and short of it is that the summary judgment rule applies in job discrimination cases just as in other cases. No thumb is to be placed on either side of the scale.

*Chapman v. AI Transport*,  229 F.3d 1012, 1026 (11th Cir. 2000).  *See also Burke-Fowler v. Orange County, Florida*, 390 F.Supp.2d 1208, 1211 (M.D.Fla. 2005) (citing *Chapman* for the proposition that the summary judgment rule is equally applicable to discrimination cases as to other cases) ; *Johnston v. Henderson*, 144 F.Supp.2d 1341, 1349 (S.D.Fla. 2001) (same).

**II.     BACKGROUND**

Plaintiff Karen Waller, formerly known as Karen Ramati[1], brought this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.*, and the Florida Civil Rights Act, Chapter 760 ("FCRA"), alleging discrimination based on sex, specifically pregnancy.

---

[1]The case is captioned "Waller" because Plaintiff married and took her husband's name after her employment with Defendant ended.  Because Plaintiff was known by "Ramati" during her employment with Defendant, and because both parties use "Ramati" in their respective briefs, the Court will from this point forward refer to Plaintiff as Ramati.

In short, Ramati claims that in October 2004, she was terminated because she was pregnant.

In June 1999, Plaintiff was hired by Defendant, Medics Ambulance Service, Inc. ("Medics"), as a driver. Robert Eberhart, then-Director of Operations for Defendant, made the hiring decision. Eberhart later became Defendant's Chief Operating Officer. In both the Director of Operations and COO positions, Eberhart had a supervisory role over Ramati. A few months after her initial hire, Ramati was promoted to the position of dispatcher. She remained in that position until her termination. Beginning around June 2003, in addition to Eberhart as a supervisor, Ramati's direct supervisor was Reginald Graham.

In 2002, Plaintiff had a child while employed at Medics. Ramati admits that Defendant and Eberhart treated her well during her pregnancy, but the parties dispute whether Eberhart requested Ramati return to work only two or three weeks after she gave birth. Additionally, Ramati does not dispute that Medics generally cooperated with her when it concerned child care.

During Ramati's tenure at Medics, she received multiple letters of warning and other write-ups regarding performance deficiencies or other inappropriate conduct, as well as oral warnings and counseling. While Ramati disagrees with the basis for some of the warnings, she acknowledges receiving warnings for, among other things: poor overall job performance; failure to properly log narcotics; use of alcohol on the business premises; failure to follow the chain of command; receiving or making personal phone calls while at work and on Medic's phone lines; receiving forwarded personal mail at work; smoking inside the building or allowing cigarette smoke to enter the building through an open door; and, failure to follow policies or procedures. Moreover, Ramati received multiple warnings, both written and oral, regarding tardiness and attendance. These warnings were given over the course of Ramati's employment. The first warning Plaintiff received while pregnant was on September 22, 2004, during her second

pregnancy at Medics and less than a month before her employment was terminated. On October 11, 2004, Plaintiff called in to work sick. She gave Medic's at most one-and-one-half hours of notice**.**  At the time, Plaintiff was over five-months pregnant and, having gestational diabetes, decided the best course of action was to go to the hospital. The following day, Plaintiff returned to work, but was told by Eberhart to go home. Defendant was terminated on October 12, 2004.

Several months after her termination, Plaintiff filed an EEOC complaint, alleging wrongful termination on the basis of gender, specifically, pregnancy. On August 15, 2006, the EEOC issued a Letter of Determination finding that reasonable cause existed to believe that Medics had violated the controlling statutes. The EEOC issued a Notice of Right to Sue letter in December 2006. The parties dispute the relevance and admissibility of the EEOC findings.

### III.   ANALYSIS

As the parties agree that there is no evidence of direct discrimination, to sustain her claim of disparate treatment, Plaintiff must "present circumstantial evidence from which an inference of intentional discrimination may be drawn." *Armstrong v. Flowers Hosp., Inc.*, 33 F.3d 1308, 1313 (11th Cir. 1994). Ramati must first "establish a *prima facie* case which creates a rebuttable presumption of discrimination." *Id.* If Plaintiff can establish a *prima facie* case, the burden shifts to Defendant to articulate a nondiscriminatory basis for its action. *Id.* "In order for the plaintiff to prevail, she must persuade the factfinder that the proffered reason is a pretext for discrimination." *Maddox v. Grandview Care Center, Inc.*, 780 F.2d 987, 990 (11th Cir. 1986).

Establishment of a *prima facie* case requires Plaintiff to show four elements: (1) she is a member of a group protected by Title VII[2]; (2) she was qualified for the position at issue; (3) she

---

[2]Because the Florida Civil Rights Act was patterned on Title VII, they are both analyzed under the same principles, and cases construing Title VII are applicable to FCRA claims. *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998).

suffered an adverse employment action; and (4) she suffered from a differential application of work or disciplinary rules.  *See Spivey v. Beverly Enter., Inc.*, 196 F.3d 1309, 1312 (11th Cir. 1999); *Armstrong*, 33 F.3d at 1314.  Here, as Defendant has conceded for purposes of this motion the first three prongs, the Court need only address whether Ramati suffered from a differential application of work or disciplinary rules.

Plaintiff argues that two other Medics' employees, similarly situated but outside of Plaintiff's class, were treated more favorably that Plaintiff despite similar infractions.  Plaintiff's arguments fail as to both individuals.  First, Plaintiff argues that Lisa Glynn, having received both oral and written warnings, and having been late "four (4) times" the number of times Ramati was tardy, was nonetheless given a pay raise and promoted.  Ramati fails to take into account that Glynn was apparently never warned or disciplined for anything other than tardiness.  Plaintiff on the other hand was warned or disciplined for, *inter alia*, poor overall job performance, violations of policies and procedures, smoking in the building, making and receiving personal telephone calls that disrupted the business, and absenteeism.  Moreover, Eberhart's unrebutted deposition testimony is that Glynn was an exceptional dispatcher, and as such, was given the benefit and promotion despite her tardiness issues.

Ramati also claims that Israel Leonardo is a valid comparator who was treated more favorably that Plaintiff.  Leonardo, like Plaintiff, was fired.  However, Ramati claims that Eberhart conducted an investigation before terminating Leonardo, and that she too was entitled to an investigation prior to termination.  Plaintiff overlooks that fact that Leonardo was fired in response to a customer complaint and that an investigation was warranted to determine the validity of the complaint and appropriate discipline for the employee.  As Defendant persuasively argues, this situation is entirely different from Plaintiff's. Plaintiff's performance issues had been

well documented and her supervisors were aware of the issues leading up to her termination, eliminating the need for an investigation.

I find that the only two comparators Plaintiff named are not proper comparators and that therefore, Ramati has failed to establish a *prima facie* case. Although Plaintiff has not met her burden, I will briefly address why, even if she had, Defendant has articulated legitimate nondiscriminatory reasons for terminating Plaintiff and why Plaintiff cannot establish pretext.

Plaintiff makes much of comments made or purported to be made by Eberhart that, though lacking a sense of respect and caring, do nothing to upset the overwhelming evidence that Defendant fired Plaintiff based on poor job performance after multiple and repeated infractions and multiple warnings. Moreover, these comments at most evidence a personal dislike for Plaintiff or her work habits, not a discriminatory intent or animus. Defendant has put forth several legitimate nondiscriminatory bases for terminating Plaintiff, but has principally argued that the multiple different infractions and repeated warnings led to the determination that Ramati had such poor overall job performance that it was in the Defendant's interest to terminate her.

Plaintiff, in arguing that these bases are pretext, relies on the EEOC Letter of Determination and Notice of Right to Sue, as well as a single Southern District of Florida case. Defendant, predictably, responds by arguing that the EEOC notices are either inadmissable, or if admissible, of no probative value. As this case is not before a jury, I see no need to find the letters inadmissible. I do, however, agree that they are of little probative value. The letters issued to Ramati were entirely conclusory, finding "that the evidence obtained during the investigation establishes that there is reasonable cause to believe that violations of the statute have occurred" and "[t]he EEOC found reasonable cause to believe that violations of the statute(s) occurred with respect to some or all of the matters alleged[,]" respectively. In *Lee v.*

*Executive Airlines, Inc.*, the Court excluded an EEOC Letter of Determination because it did "not outline, even summarily, the evidence upon which it relies for its conclusions[.]" 31 F.Supp.2d 1355, 1357-58 (S.D.Fla.1998) (J. Middlebrooks). Both letters here similarly provide no outline or indication of the evidence relied upon in drawing the conclusion that discrimination occurred. Further, *McKenzie v. Citation Corp., LLC*, 2007 WL 1424555 (S.D.Ala. May 11, 2007), the case relied on by Plaintiff to support reliance on the EEOC letters is inapposite. In *McKenzie*, the court refused to strike the EEOC letter because the case was not in front of a jury and "[t]he court is capable of considering only the relevant and proper portions of the evidence submitted and will discuss the relevancy of the evidence in its analysis." 2007 WL 1424555, at *8. The court noted that EEOC determinations *could* be probative, but made no determination that the one before it was of value.

   Plaintiff's analogizing of this Case to *Armindo v. Padlocker, Inc.*, 71 F.Supp.2d 1238, 1239 (S.D.Fla. 1998) is also faulty. First, the *Armindo* court granted summary judgment in favor of the defendant-employer, finding that the employers stated reason for discharge-- absenteeism/lateness--was a legitimate nondiscriminatory basis against which plaintiff had presented no evidence of pretext. *Armindo*, 71 F.Supp.2d at 1240. The court noted that plaintiff testified that she had no knowledge of any employee treated differently than her on account of attendance. Ramati would have this Court conclude that because she alleged that another Medic's employee was treated differently, the outcome of this case should be the opposite of *Armindo*. This argument is wholly unpersuasive. As discussed *supra*, Plaintiff has failed to present a single proper comparator, leaving her in the same boat as the plaintiff in *Armindo*, although for different reasons. Moreover, if anything, the court's simple, concluding statement in *Armindo* nicely sums up the disposition of this case: "While Title VII and the Pregnancy

Discrimination Act prohibit adverse employment actions because an employee is female and pregnant, the law was not designed to prevent an employer from firing a non-performing employee who happens to be pregnant." *Id.* at 1241.

## IV. CONCLUSION

While Plaintiff's calling in sick on October 11, 2004 may have been for legitimate purposes, and may not have been the straw expected to break the camel's back, Plaintiff has failed to establish a *prima facie* case or to show that Defendant's legitimate nondiscriminatory bases for termination were mere pretext for actions motivated by discriminatory intent. Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment [DE 31] is **GRANTED**. Any pending motions are **DENIED** *as moot*. The Clerk shall **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 29th day of May, 2008.

_____
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*The Hon. Ted E. Bandstra*
*Counsel of Record*